**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CORY LEE THOMAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 4:24-cv-00481-AGF |
| UNKNOWN LEGGINS, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on self-represented plaintiff Cory Lee Thomas's application to proceed in the district court without prepaying fees or costs. Having reviewed the application, the Court finds plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $3.64. Furthermore, after initial review, the Court will dismiss this action for failure to state a claim upon which relief may be granted.

### Initial Partial Filing Fee

A prisoner bringing a civil action is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted a certified account statement for the five months preceding the filing of his lawsuit. Based on this information, the Court finds that plaintiff has an average monthly deposit of $18.20. The Court will assess an initial partial filing fee of $3.64, which is twenty percent of his average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d

1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against eleven defendants, alleging his constitutional rights were violated when he refused to talk to mental health providers and, subsequently, was put on suicide watch. He names as defendants the following individuals employed at Potosi Correctional Center (PCC): Unknown Leggins (COI); Unknown Delay (COII); Jon Doe 2; Unknown Gettinger (Program Specialist); and Joshua Browers (Program Specialist). He also names as defendants the following employees of Centurion Healthcare: Christy Unknown; Jessica Unknown; Jon Doe 1 (mental health provider), Unknown Corvell, Jan Doe 1 (mental health provider); and Unknown Lindell. He sues all defendants in both their individual and official capacities. (Compl. at 3, 11).

As background, plaintiff states that he had an experience on November 14, 2023 while incarcerated at Farmington Correctional Center (FCC), where he fought for his life.[1] Because of this encounter, he was transferred to PCC in Potosi, Missouri, where he is currently incarcerated.

For his first complaint, plaintiff states that on December 14, 2023, CO Leggings yelled at him that if he did not stop banging on his cell door, "I'll come beat you to death." Compl. at 4. He states that since Leggings threatened him, he has been in mental anguish daily.

---

[1] According to Missouri Case.net, plaintiff was charged with second degree murder arising out of the events at FCC on November 14, 2023. In the sworn probable cause statement, officers allege plaintiff beat his cellmate to death. *See Missouri v. Thomas*, 24SF-CR00669 (St. Francois Cty., Jun. 4, 2024).

Separate from this event, plaintiff states that on December 27, 2023, a correctional officer came to plaintiff's cell door asking if he wanted to meet with a psych doctor.[2] Plaintiff said that he did not. Five minutes later, Centurion employees Cristy and Jessica told plaintiff that he had to talk to the psych doctor. Plaintiff agreed to talk to the doctor so "they would quit harassing [him]." The doctor asked plaintiff if he wanted to talk about what happened at FCC. Plaintiff said he did not and that he did not need the doctor's services. The doctor said he would check back with plaintiff in three months.

At some point between December 27, 2023 and January 5, 2024, defendant Delay came to plaintiff's cell. Plaintiff told Delay that he needed to talk to someone about how he was being treated and that he was in fear for his life. Delay stated that everyone knew what was going on and that they would put plaintiff on suicide watch. Plaintiff states that he was not suicidal and that he did not want to be placed on suicide watch. Delay said it was the captain's orders and ordered plaintiff to cuff up.

Plaintiff states that on January 3, 2024, defendant Corvell came to plaintiff's door and "twisted plaintiff's words reporting them to Centurion." ECF. No. 1 at 9. On January 5, 2024, plaintiff was placed in a Transitional Care Unit (TCU) cell. Multiple correctional officers told plaintiff that he should not be in the TCU. Between January 5, 2024 and January 19, 2024, Centurion employees made plaintiff talk to a psych doctor. Plaintiff asked the doctor what information he had in his file about plaintiff. Plaintiff states that several things in the doctor's file

---

[2] Plaintiff refers to all the Centurion defendants as "psych doctors," without specifying whether they are psychologists, psychiatrists, counselors, etc. Because the Court has no more information regarding these medical defendants, it will use plaintiff's term "psych doctors."

were false. Plaintiff also alleges that the doctor attempted to get him to talk about his pending criminal case.

On January 24, 2024, defendant Lindell spoke to plaintiff. Prior to this conversation, defendant Pena had asked plaintiff if he was ready to talk to the doctor, and plaintiff stated no. Pena and Lindell spoke to each another and Lindell ordered Pena to put plaintiff on full suicide watch. Plaintiff did not want to be on full suicide watch and he did not comply with the officers' instructions to cuff up. "Plaintiff kept stating they have been treating me foul, and I haven't done anything, I need to talk to someone." *Id.* at 13. The captain came to plaintiff's cell and asked him to cuff up. Plaintiff said no and stated that he needed to talk to someone. "Then the captain left and a sergeant came and thr[ew] a bomb on plaintiff." *Id.*

On January 25, 2024, defendant Lindell came to plaintiff's cell door and tried to get plaintiff to talk about his case again. Plaintiff states Lindell has "pushed, pushed plaintiff on multiple occasions to talk about his case," and he considers this a violation of his Fifth Amendment right to be free of self-incrimination. Plaintiff alleges Lindell "started twisting his words and said 'we think he tried to rape you.'" *Id.* at 13. Plaintiff stated that that was not true and that he did not want to talk about it. Plaintiff alleges that defendants' efforts to get him to talk about his case caused him to have flashbacks and "mental anguish." *Id.*

On March 5, 2024, plaintiff asked defendant Browers for a grievance form and he was denied. Plaintiff states that he is in constant fear for his life. Plaintiff has attempted to file grievances, but Browers would not process the grievances. Browers also denied plaintiff a QLC, which he apparently needed to use the law library, and an E-file for recording court documents. Plaintiff states "Mr. Browers . . . has degraded Plaintiff, laughed in Plaintiff's face, tellin[g]

Plaintiff there's nothing you can do, fighting and refusing Plaintiff proper treatment and paperwork for Plaintiff's abuse, mental anguish, PTSD, and being in fear for his life." *Id.* at 22.

For relief, plaintiff seeks damages of $110,000, which he calculates as $10,000 per defendant. He also seeks to transfer prisons.

**Discussion**

Plaintiff alleges defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights by attempting to force him to accept treatment from psychiatric doctors at PCC. When he refused treatment, plaintiff states defendants unnecessarily placed him on suicide watch. Additionally, plaintiff alleges defendants violated his Fourteenth Amendment rights by denying him grievance forms and not processing his grievances.

(a)     The PLRA Requirement of Physical Injury

The PLRA states "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. 1997e(e). To recover more than nominal damages under the statute, a prisoner must allege more than mental or emotional injury. The Eighth Circuit interprets the PLRA "to require more than a de minimis physical injury." *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018). The PLRA's physical injury requirement applies to all constitutional claims. *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).

Here, plaintiff alleges no physical injury arising out of the alleged constitutional violations. He suffers mental anguish, PTSD, and fear for his life. Because plaintiff's complaint seeks damages only for this mental or emotional suffering, it does not meet the PLRA's physical injury

requirement, and his claims for compensatory damages will be dismissed. *See e.g.*, *Upchurch v. Tillman*, No. 4:19-cv-223-JCH, 2019WL 2357373, *2 (E.D. Mo. Jun. 4, 2019) (finding the PLRA bars recovery for plaintiff's mental anguish).

*(b) 8th Amendment Claims*

To the extent plaintiff might seek nominal damages for the alleged constitutional violations, the Court finds he has not stated plausible claims. His allegations that he was encouraged by prison medical staff to seek psychological treatment does not amount to cruel and unusual punishment or deliberate indifference to medical needs. To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997). To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). Here, prison officials recognized that plaintiff had an objectively serious medical need for mental heath treatment, and they attempted to provide that treatment. Plaintiff's refusal to speak to the mental health professionals does not create any deliberate indifference on the part of prison staff.

Moreover, his placement on suicide watch for twenty days does not rise to the level of cruel and unusual punishment. To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendants behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). With respect to the "civilized measure of life's

necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). Plaintiff alleges only that he was placed on suicide watch against his will. He does not complain that he was denied any civilized measure of life's necessities, *i.e.*, clothing, food, shelter, and medical care. Nor does he allege that any defendants acted with deliberate indifference to his health and safety. His Eighth Amendment claims will be dismissed.

(c) *Fifth Amendment Claims*

Plaintiff alleges that defendants violated his Fifth Amendment right against self-incrimination by attempting to provide him psychological treatment in the form of talk therapy. The Fifth Amendment prohibits the prosecution from using compelled testimony to convict a criminal defendant. U.S. Const. amend. V; *see also Oregon v. Elstad*, 470 U.S. 298, 306-307 (1985). Here, plaintiff has alleged no facts from which the Court could find that the mental health professionals attempting to treat him were attempting to coerce an incriminatory statement from him. Also, there is no suggestion that plaintiff made any incriminatory statements. The Court cannot find any plausible claims that by encouraging plaintiff to participate in talk therapy defendants violated his Fifth Amendment right against self-incrimination.

(d) *Fourteenth Amendment Claims*

Finally, plaintiff's allegations that defendants refused his grievance requests does not create a plausible Fourteenth Amendment claim. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison

officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *see also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). Here, plaintiff complains that defendants refused to provide him with grievance forms and refused to respond to the grievances he filed. Because plaintiff does not have a constitutionally protected right to the grievance procedures, the Court will dismiss his Fourteenth Amendment claims.

For the foregoing reasons, the Court will dismiss plaintiff's complaint on initial review for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $3.64 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's complaint against defendants Mr. Unknown Leggins, Mrs. Christy Unknown, Mrs. Jessica Unknown, Jon Doe 1, Mr. Unknown Delay, Mrs. Unknown Corvell, Mrs. Jan Doe 1, Mr. Jon Doe 2, Mrs. Unknown Lindell, Mrs. Unknown Gettinger, and Joshua Browers is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED as moot**. [ECF No. 3]

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 22nd day of July 2024.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE